## No. 15,744.

### THOMPSON *v.* DAVIS.

(184 P. [2d] 133)

Decided August 11, 1947.

Messrs. FAIRLAMB & FAIRLAMB, Messrs. BRYANT & PETRIE, for plaintiff in error.

Messrs. DUTCHER & TULLIS, for defendant in error.

In Department, before: MR. CHIEF JUSTICE BURKE, MR. JUSTICE STONE and MR. JUSTICE ALTER.

PER CURIAM.

HEREIN reference will be made to the parties as they appeared in the trial court where the plaintiff in error was defendant and defendant in error was plaintiff. Upon trial of a replevin action where the specific personal property could not be delivered, plaintiff had judgment in the sum of $889.00, with damages added thereto in the sum of $44.50, to review which judgment defendant is here by writ of error.

Plaintiff, in his amended complaint filed in the county court, alleged that he was the owner of and entitled to the possession of 69 unbranded and paint branded ewes and 85 unbranded lambs, some of which lambs were, and some of which were not, earmarked or earcropped, all valued at $1318.00 and which were in defendant's possession without plaintiff's consent. The complaint further alleged demand for the return of the ewes and lambs and defendant's refusal to do so. Plaintiff prayed judgment for the possession of the ewes and lambs or $1318.00 as the value thereof together with $600.00 damages for their detention. The writ of replevin issued and the sheriff took possession thereunder of 66 sheep, and thereafter defendant regained possession of said sheep by giving the sheriff a redelivery bond.

The answer, for all purposes material here, was a general denial.

The trial in the county court resulted in a verdict for $1318.00 as the value of the sheep together with $600.00 damages for the detention thereof. On appeal to the district court, trial to a jury resulted in a verdict in plaintiff's favor finding "that the defendant wrongfully detained 67 head of ewes and 10 head of lambs which are the property of plaintiff, and that the aggregate value of said sheep is $889.00, and we fix plaintiff's

damages by reason of the detention of said sheep at
$44.50." Thereafter judgment was entered on the ver-
dict, and it is now before us for review.

The specification of points upon which defendant re-
lies for a reversal are twelve in number and may be
summarized thusly: 1. The judgment is contrary to the
law and evidence and is capricious and arbitrary; 2. the
court erred in instructing a verdict for plaintiff for six
sheep; 3. the court erred in its instructions; 4. the court
erred in its comments respecting a witness. The sum-
marized specifications will be considered in the order
mentioned.

1. The record discloses that both plaintiff and defend-
ant were owners of sheep which, in the summer season
of 1944, were grazing upon allotted government lands
contiguous, or nearly so, to each other, as a result of
which the flocks intermingled. On or about September
1, 1944, plaintiff, with another, counted the sheep in his
flock and, as a result thereof, found that there were
680 ewes and 307 lambs. Shortly thereafter, upon count-
ing his sheep again, he found but 470 head of ewes and
152 lambs, whereupon he began a search for the 365
sheep found on the second count to be missing, and later
learned that some thereof were in defendant's meadow.
On or about ten days later he was served with a notice
in which defendant demanded arbitration as provided
in section 61, chapter 160, '35 C.S.A., and in which no-
tice plaintiff was advised that defendant was "holding
two hundred (200) head of ewes belonging to you, and
that I will deliver possession of said *ewes* to you upon
your payment to me of the sum of Fifteen Hundred
Fifty ($1550.00) Dollars damages which I have suffered
by reason of the mixing of said sheep with sheep be-
longing to me and for damages caused by the trespass
of said sheep upon the following described patented land
belonging to me * * * and upon the payment to me in
addition of the sum of Twenty-five Cents (25¢) per head
per day for the feeding and care of said sheep from the

13th day of September, 1944 and as long as it may be necessary for me to feed and care for said *ewes*." (Italics ours) The award of the board of arbitration appointed as provided in the statute resulted in a finding that defendant had not been damaged by reason of the mixing of the sheep, nor had he been damaged by a trespass, nor was he entitled to be paid for feeding and caring for the sheep. The award required defendant to yield possession of the sheep to plaintiff. Following the award of the board of arbitration, defendant permitted plaintiff to take possession of 211 ewes. Subsequent to the delivery of the sheep under the award, plaintiff continued a search for his missing sheep and found some thereof in defendant's possession with defendant's brands thereon, as a result of which the replevin action here was commenced.

There was competent evidence before the jury, which, if believed by it, established that 67 ewes in defendant's possession were recently "paint branded" and there was competent evidence before the jury that shortly prior to the replevin action defendant had "paint branded" about 70 ewes. There was competent evidence before the jury which, if believed by it, established the identity of these ewes as those belonging to plaintiff's flock, each thereof being a different breed from those owned by defendant. There was competent evidence before the jury diametrically opposite that of the plaintiff. Under these circumstances the jury was charged with the duty of determining which witnesses were the more worthy of credit and give credit accordingly. Respecting the ewes, the jury found the plaintiff's witnesses more worthy of credit and returned its verdict in accordance therewith. The jury found that defendant had possession of ten lambs belonging to plaintiff, and, inasmuch as these had not been recovered under the writ of replevin, it found the value thereof and returned a money judgment in plaintiff's favor therefor. The record does not contain any direct and positive evidence to the effect

that defendant had in his possession at any time only ten lambs belonging to plaintiff. However, the attorney who prepared the notice of arbitration under section 61, chapter 160, '35 C.S.A., was, with defendant's consent, called as a witness for plaintiff and testified that about the 15th day of September, 1944, and prior to the preparation of the notice demanding an arbitration, he prepared a memorandum from the data given him by defendant upon which appeared the notation, "200 head of sheep, about 20 lambs, about 200 ewes, brand looks like an F." This memorandum was produced at the trial and clearly indicated that at the time of the preparation of the notice demanding an arbitration defendant had in his possession lambs belonging to plaintiff. It should also be noted that when plaintiff secured possession of the impounded sheep in defendant's possession no lambs were recovered. The record discloses that subsequent to the impounding of plaintiff's sheep defendant shipped lambs without notifying plaintiff of his intention so to do and without affording plaintiff an opportunity of ascertaining whether or not any lambs belonging to him were intermingled with those which defendant was shipping. There is also evidence in the record that subsequent to the award of the board of arbitration lambs identified as those belonging to plaintiff were seen in defendant's possession. There was no positive, direct evidence before the jury that only ten lambs belonging to plaintiff were in defendant's possession and therefore defendant contended that the jury's finding with respect to the lambs is not supported by any evidence. The verdict, defendant contends, is therefore capricious and arbitrary and an attempt upon the jury's part to compromise the difference between the parties to this litigation. There is, as we have said, competent evidence to warrant the jury's finding that there were four or five of plaintiff's lambs in defendant's possession, and there is competent evidence before the jury to justify its finding that defendant was in possession of twenty

lambs belonging to plaintiff, and, as we understand defendant's contention, if the jury had returned its verdict for five or for twenty lambs the verdict would be unassailable because of competent evidence to support it.

It is defendant's contention that the record must disclose by some competent evidence that defendant had in his possession ten lambs; otherwise the verdict was arbitrary and capricious and the result of an attempted compromise by the jury. Defendant relies upon our decisions in *Burns-Moore Mining & Tunnel Co. v. Watson*, 45 Colo. 91, 101 Pac. 335; *Hedgpeth v. Schoen*, 109 Colo. 341, 125 P. (2d) 632; *Burlington Interurban Railway Co. v. Chapman*, 53 Colo. 28, 123 Pac. 649; *Lenander v. Graves*, 45 Colo. 246, 100 Pac. 403; *Galligan v. Luther*, 54 Colo. 118, 128 Pac. 1123; *The Hassell Iron Works Co. v. Cohen*, 36 Colo. 353, 85 Pac. 89; *Jensen v. Nall*, 53 Colo. 212, 124 Pac. 471; *Robeson v. Miller*, 4 Colo. App. 313, 35 Pac. 880; *Rankin v. Cardillo*, 38 Colo. 216, 88 Pac. 170. It would unduly lengthen this opinion to discuss each one of the decisions upon which defendant relies, but we shall content ourselves with the statement that in the main these decisions are based on express contracts, and those which are not based on express contracts are readily and easily distinguishable from the factual situation presented in the instant case.

The burden was upon defendant to establish that the verdict of the jury respecting the lambs is arbitrary, capricious and an attempt on the jury's part to compromise the difference between plaintiff and defendant, and in this he failed. There was a conflict in the evidence; one witness testified that he saw four or five lambs belonging to plaintiff which were in defendant's possession; another testified to defendant's admission that he had in his possession twenty lambs which belonged to plaintiff. We are not disposed to invade the province of the jury and disturb its verdict.

2 and 3. The trial was concluded and the ver-

dict of the jury rendered on June 29, 1945. The record discloses the following:

"Whereupon the Jury is excused until 2:30 o'clock P. M. of this day, and the instructions to the jury are prepared and approved by the court.

"And thereupon it is stipulated and agreed between counsel for the respective parties and approved by the court that counsel for the defendant may have a period of ten days from this date within which to submit their objections and exceptions to the giving of such instructions as they may desire to except and object to, and therefore are not required to make such objections and exceptions at the close of the case."

No objections to any of the instructions given to the jury appear in the record within the time specified in the stipulation.

On July 28, 1945, a motion for a new trial was filed, in which motion defendant contended that the court had committed prejudicial error in the giving of certain instructions. Thereafter the motion for a new trial was denied on August 16, 1945, and judgment entered on the verdict.

On October 2, 1945, the following stipulation was entered into by counsel for plaintiff and defendant: "It is hereby stipulated and agreed, By and between Nourse and Dutcher, by E. L. Dutcher, Attorneys for Plaintiff, and Fairlamb & Fairlamb, and Bryant & Petrie, by Earle Bryant, Attorneys for Defendant, that the defendant's objections to given Instructions Nos. 1, 3, 4, 7 and 10, as set forth in Defendant's Motion for New Trial filed herein, shall be and are considered as objections to such instructions as made by counsel for defendant at the close of the evidence herein and before submission to the jury for their consideration; and that no separate or additional objections are necessary to be filed herein."

Rule 51, R.C.P., provides: "When any party desires special instructions, they shall be numbered and ten-

dered to the court in duplicate, the original being unsigned. *All instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. Only the grounds so specified shall be considered on motion for a new trial or on writ of error.* * * * " (Italics ours)

The record discloses that in submitting the instructions to the jury but one verdict was prepared therewith. The record also discloses that in instruction No. 1 the court included an instruction for a directed verdict for plaintiff for two ewes and four lambs, in the following language: "You are further instructed that during the trial of said cause the plaintiff has claimed that he had two head of ewes belonging to said plaintiff, and the plaintiff testified, which testimony has not been denied or refuted by the defendant and must, therefore, be considered as having been admitted; that the defendant had an additional four head of lambs on his premises which he detained from the plaintiff and which the plaintiff owned, and that by reason thereof you are instructed that the only issues for you to determine in this case are the number of sheep, if any, over and above the six head herein referred to, that the defendant had of plaintiff's sheep and detained the same from the plaintiff's possession at the time said suit was instituted, the value of all of said sheep including the six head herein referred to, and the amount of the damages, if any, to which the plaintiff would be entitled."

Had the attorneys been diligent in complying with the provisions of Rule 51 R.C.P., and had the trial court insisted upon adhering strictly to said rule, the alleged errors of which defendant now complains might have been corrected. It does not lie within the power of the attorneys, nor within the province of the court, to disregard any of the Rules of Civil Procedure, and the attempt so to do by the stipulation entered into between counsel and approved by the court on June 28, 1949, as well as the stipulation entered into between

counsel on October 2, 1945, was ineffectual. Because proper objections to the giving of the instructions were not made at the time provided in Rule 51, supra, we decline to pass upon any specifications relating thereto. Our decisions supporting this disposition of these specifications are numerous. We do this with less reluctance because a consideration of the instructions does not convince us that there were prejudicial errors therein. We do not wish to be understood as approving the instructions given nor do we wish to be understood as approving the manner of directing a verdict as to some of the sheep, nor do we wish to be considered as approving the court's failure to submit more than one form of verdict. We decline to pass upon these questions.

4. One of plaintiff's witnesses, who had been a former employee of defendant, testified that about the 27th day of September, 1944, he assisted defendant in branding about 70 sheep, some of which were renewal brands, and the others of which were new brands. This was denied by defendant. Other witnesses for plaintiff testified that the 67 ewes taken under the replevin writ all were freshly branded, and this evidence seems to have been given credence and accepted as true by the jury. On cross-examination the witness who testified as to the branding stated that he was unable to read or write, and an examination of the record indicates that he was of less than average mentality. He was asked if he had ever been convicted of a crime, to which he replied that he had not. It is apparent from the record that the witness misunderstood the term "convicted" for he later readily admitted that he had been arrested for larceny and had eventually entered a plea of guilty. The evidence as to his former conviction was ostensively for the purpose of attacking the witness's credibility. The trial judge, who evidently had personal knowledge of the witness's arrest and plea in the criminal case, stated:

"If there had been any reflection on this boy in this case, I want to say in his behalf that Williams [a co-

defendant] was the man who ran away from his bond. I want to put that in for the boy. This man Williams, subsequently he died, ran away and we had to send down there [Oklahoma] to get him. * * *

"Howell [the witness] was arraigned and entered a plea of guilty. I stated the facts in defense of this boy. We felt at the time this boy wasn't the instigator, and Johnney Williams was. He led the other two boys into the deal, and subsequently Johnney Williams committed suicide in the jail in Delta."

There was no objection entered as to the statement made by the court with reference to the witness and in fact the court's statement under the circumstances here might well have been justified. In the absence of objection, the error, if any committed, is not properly presented.

■ This action was tried in the county court before a jury, the verdict of which was in favor of plaintiff for $1918.00 and costs, and judgment entered thereon. It was again tried on appeal to the district court before a jury, the verdict of which was in the sum of $889.00 together with $44.50 damages. There was a conflict in the evidence, and a determination, consequently, came within the province of the jury. The burden rests upon the defendant to establish prejudicial error in the trial, and this he has not done.

The judgment is affirmed.

In this case acknowledgment is made of the gratuitous and valuable service of the Hon. Osmer E. Smith, district judge, as referee under our Rule of June 9, 1947.